UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTON REALTY, LLC, and ANDY MOHR TRUCK CENTER, INC., ) ) ) Plaintiffs, ) ) ) vs. ) ) FIFTH THIRD BANK, ) ) Defendant. ) | 1:15-cv-00199-RLY-TAB |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS and MOTION TO STRIKE**

Plaintiffs, Anton Realty, LLC and Andy Mohr Truck Center, Inc., filed their seven-count Amended Complaint against Defendant, Fifth Third Bank, for claims arising out of Defendant's sale of a mortgage. This matter now comes before the court on Defendant's Motion to Dismiss and Defendant's Motion to Strike. For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss, and **DENIES** Defendant's Motion to Strike.

**I. Background**

M-3 Investments, LLC ("M-3") was the owner of commercial real estate property located at 1301 South Holt Road, Indianapolis, Indiana 46241 (the "Property"). (Filing No. 8, Amended Complaint at ¶ 6). The Property was encumbered by a mortgage held by Defendant (the "Mortgage"). (*Id.*). Andy Mohr Automotive Group, Inc. entered into a lease of the Property from M-3 on or about March 21, 2010. (*Id.* at ¶ 7). Andy Mohr Automotive Group, Inc. assigned the lease to Plaintiff Andy Mohr Truck Center, Inc.

1

("Truck Center"). Truck Center operates a Volvo semi-truck dealership on the Property. (*Id.*).

In the summer of 2013, Truck Center and Plaintiff Anton Realty, LLC ("Anton Realty"), an affiliate of Truck Center, entered into negotiations with M-3 to purchase the Property. (*Id.* at ¶ 8). Defendant was aware of these negotiations because Anton Realty discussed its desire to purchase the Property with Defendant. (*Id.* at ¶ 12). Nonetheless, Defendant agreed to sell the Mortgage to Guardian Brokers ("Guardian") around this time. (*Id.* at ¶ 13). Defendant did not disclose this fact to either M-3 or Anton Realty. (*Id.*).

On September 5, 2013, Defendant was made aware of Anton Realty's imminent purchase of the Property from M-3 for an amount that would satisfy the Mortgage in full. (*Id.* at ¶ 14). On that same day, Defendant informed M-3 that Anton Realty's purchase was permissible and would extinguish the pending sale of the Mortgage to Guardian. (*Id.*).

On September 9, 2013, Defendant sent a payoff letter (the "Payoff Letter") to M-3 in response to its request for same. (*Id.* at ¶ 10; Filing No. 8-2, Exhibit B). In the Payoff Letter, Defendant agreed to "issue appropriate release of mortgage as it relates to the commercial property referred to as 1301 S. Holt Road, Indianapolis, Indiana, upon receipt of the following in U.S. Dollars . . . $765,443.99." The Payoff Letter also states that it "is valid until September 12, 2013."

After issuing the Payoff Letter, Defendant notified Guardian of Anton Realty's pending purchase of the Property. (Amended Complaint at ¶ 15). In response, Guardian

2

requested that Defendant accelerate the closing on its contract to purchase the Mortgage. (*Id.*). Defendant accepted Guardian's request, and attempted to immediately assign the Mortgage to Guardian. (*Id.* at ¶ 16). That attempt was unsuccessful. (*Id.*). On September 10, 2013, Defendant issued a notice to M-3 that the note had been sold to Guardian (the "Loan Transfer Notice"). (Filing No. 8-6, Exhibit F).

Anton Realty and M-3 formally executed the Contract for Purchase of Real Estate ("Purchase Agreement") on September 11, 2013. (Amended Complaint at ¶ 8; Filing No. 8-1, Exhibit A). According to the Purchase Agreement, Anton Realty agreed to pay M-3 "an amount equal to the outstanding principal balance and interest accrued" on the Mortgage. (Exhibit A). M-3 agreed, in turn, to deliver to Anton Realty a fully-executed limited warranty deed conveying marketable fee simple title to the Property. (*Id.*). At closing, Anton Realty tendered $767,400.90, which was intended to satisfy the full amount outlined in the Payoff Letter plus closing costs. (Amended Complaint at ¶ 17).

After M-3 executed and delivered the limited warranty deed, M-3 received the Loan Transfer Notice from Defendant. (*Id.* at ¶ 18). Anton Realty then tendered the payoff amount to both Defendant and Guardian, but both refused to accept the sum. (*Id.* at ¶ 20). On September 18, 2013, Anton Realty demanded, pursuant to Indiana Code § 32-28-1-2, that Guardian release, discharge, and satisfy the Mortgage by no later than fifteen days after receipt of the written demand. (*Id.* at ¶ 22; Filing No. 8-8, Exhibit H). Guardian did not comply with the demand. (Amended Complaint at ¶ 24).

**II. Defendant's Motion to Strike**

Defendant filed its Motion to Dismiss on May 28, 2015. Plaintiffs' Response brief was due on or before June 15, 2015. In an apparent clerical error, Plaintiffs did submit a filing on that date, but it was actually Defendant's Motion to Dismiss. Plaintiffs attempted to correct this mistake by filing their Response brief the next day, June 16, 2015. The court's Clerk's Office subsequently notified Plaintiffs that the proper procedure under these circumstances is to file a motion to withdraw the erroneously filed document, and then file the correct brief. Plaintiffs followed these instructions and ultimately filed their Response on June 18, 2015, three days after the deadline.

In the face of those undisputed facts, Plaintiffs confidently assert that their Response was not untimely. They are wrong. Plaintiffs' brief was filed at least one (and perhaps even three) days after the deadline.

Defendant argues that the court should strike Plaintiffs' Response brief as untimely. Plaintiffs object[1], and invoke Federal Rule of Civil Procedure 6(b)(1)(B): "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." The Supreme Court has broadly defined "excusable

---

[1] Plaintiffs' brief opposing Defendant's Motion to Strike includes considerable commentary on arguments raised by Defendant in its Reply. Plaintiffs apparently viewed this brief as an opportunity to have the last word on the Motion to Dismiss, but these remarks were improper and unnecessary. Plaintiffs did not seek leave to file a surreply, so their brief should have been confined to the pending motion to strike. Moreover, many of the comments were petty at best. *See* Plaintiffs' Response in Opposition to Defendant's Motion to Strike at 1 ("Fifth Third's attempt is not surprising given Fifth Third's inability to rehabilitate its arguments for dismissal in its reply brief."). Counsel for Plaintiffs is advised to maintain a professional, civil tone going forward.

neglect" to include "inadvertence, mistake, or carelessness, as well as . . . intervening circumstances beyond the party's control." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). The Court went on to conclude,

> [T]he determination [of whether neglect is excusable] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395.

While Plaintiffs readily assert that unintentional misfiling is to blame here, "the problem was really that [Plaintiffs] waited until the last minute to get [their] materials together." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996). As the Seventh Circuit noted, "When parties wait until the last minute to comply with a deadline, they are playing with fire." *Id.* Nonetheless, the factors outlined in *Pioneer* unquestionably favor a finding of excusable neglect in this case. Defendants made no showing of prejudice; the delay was minimal, as Plaintiffs' Response was served on Defendant a mere day after the deadline; the reason for the delay was an innocent mistake; and there is no evidence that Plaintiffs have acted in bad faith. Therefore, Defendant's Motion to Strike is **DENIED**.

## III. Defendant's Motion to Dismiss

Defendant seeks to dismiss all seven counts of the Amended Complaint, and drop Truck Center as a plaintiff. The court sets forth the appropriate legal standard and then addresses each argument in turn.

5

### A. Legal Standard

Rule 12(b)(6) authorizes the dismissal of cases for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To withstand a Rule 12(b)(6) challenge after *Iqbal* and *Twombly*, 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is 'could these things have happened, not did they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)). For purposes of ruling on Defendant's motion, the court accepts Plaintiffs' well-pleaded factual allegations as true and construes all reasonable inferences in their favor. *Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015).

### B. Count I – Quiet Title

First, Plaintiffs seek to quiet title to the Property. In Indiana, a quiet title suit, which is "an action to remove any clouds that cast doubt upon the title," can be "either equitable or statutory in nature." *ABN AMRO Mortg. Grp., Inc. v. Am. Residential Servs., LLC*, 845 N.E.2d 209, 215 (Ind. Ct. App. 2006). Here, Plaintiffs seek only an equitable remedy. Defendant argues that Count I must be dismissed because the Amended

Complaint does not allege that Defendant maintains any interest in the Property. In support, Defendant directs the court to the Loan Transfer Notice, which purports to show that the Mortgage was sold to Guardian on September 10, 2013. (*See* Exhibit F). However, as Plaintiffs note, the Amended Complaint alleges that Defendant's assignment of the Mortgage to Guardian was unsuccessful. Defendant maintains that it has no interest in the Property, and that may very well be accurate. However, for purposes of the Motion to Dismiss, the court must accept as true Plaintiffs' allegation that the assignment was defective. Accordingly, Plaintiffs have stated a plausible quiet title claim. Therefore, Defendant's Motion to Dismiss Count I is **DENIED**.

### C. Count II – Violation of Ind. Code § 32-28-1-2

In Count II, Plaintiffs allege that Defendant violated Ind. Code § 32-28-1-2 by refusing to release the Mortgage on the Property after Anton Realty made a demand for the same in writing. Indiana Code § 32-28-1-2(a) explains that this statute may only be invoked when two conditions have been satisfied:

> (1) the mortgagor or another person having the right to demand the release of a mortgage or lien makes a written demand, sent by registered or certified mail with return receipt requested, to the owner, holder, or custodian to release, discharge, and satisfy of record the mortgage, mechanic's lien, judgment, or other lien; and
>
> (2) the owner, holder, or custodian fails, neglects, or refuses to release, discharge, and satisfy of record the mortgage, mechanic's lien, judgment, or other lien as required under section 1 [IC 32-28-1-1] of this chapter not later than fifteen (15) days after the date the owner, holder, or custodian receives the written demand.

Thus, this statute only provides a cause of action when a mortgage holder, who has received a written demand to release a mortgage, fails to release the mortgage within

fifteen days of receiving the notice.  As Defendant emphasizes, the written demand referenced by Plaintiffs was sent to Guardian, not Defendant.  (*See* Exhibit H).  Even assuming that Defendant was the holder of the Mortgage when the letter was sent, a written demand was never made upon Defendant.  Accordingly, Defendant simply could not have violated Ind. Code § 32-28-1-2.

Plaintiffs retort that they were in substantial compliance with the statute, but this argument is a nonstarter.  Plaintiffs cite to *Board of Aviation Commissioners v. Hestor* in support, but that case merely addresses substantial compliance with the Indiana Tort Claims Act: "The notice requirements of the Tort Claims Act are phrased in mandatory language, however, the courts have held that substantial compliance with its provisions will suffice when the purpose of the statute has been satisfied."  473 N.E.2d 151, 154 (Ind. Ct. App. 1985).  *Hestor* does not stand for the proposition that substantial compliance with any Indiana statute is permissible.  Moreover, Plaintiffs cite to no Indiana cases holding that substantial compliance with Section 32-28-1-2 specifically is enough.

In the end, the plain language of Ind. Code § 32-28-1-2 leaves no doubt that Plaintiffs have failed to state a claim.  Therefore, Defendant's Motion to Dismiss Count II is **GRANTED**.

### D.  Count III – Breach of Contract

In Count III, Plaintiffs allege that the Payoff Letter is a valid contract between Defendant and M-3.  Plaintiffs further allege that they are third party beneficiaries of that contract, and Defendant breached the contract by failing to accept the payoff amount that

8

Plaintiffs tendered. Defendant argues that Count III must be dismissed because (1) the Payoff Letter is not a valid contract under Indiana law; and (2) even if the Payoff Letter is a contract, Plaintiffs cannot enforce it because they are neither parties to the agreement nor third party beneficiaries. Assuming without deciding that the Payoff Letter is a valid contract, the court agrees that Plaintiffs cannot enforce it.

There is no dispute that the Payoff Letter was issued by Defendant to M-3. Accordingly, Plaintiffs make no attempt to argue that they are parties to this alleged contract. It is well established that, "[n]ormally, 'one not a party to a contract has no standing to enforce it.'" *City of Indianapolis v. Kahlo*, 938 N.E.2d 734, 742 (Ind. Ct. App. 2010) (quoting *Gregory & Appel Ins. Agency v. Phila. Indem. Ins. Co.*, 835 N.E.2d 1053, 1058 n.7 (Ind. Ct. App. 2005)). However, there is a narrow exception to this rule for third party beneficiaries. *Id.* For a contract to be enforceable by a third party,

> it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed. The intent of the contracting parties to bestow rights upon a third party must affirmatively appear from the language of the instrument when properly interpreted and construed.

*Cain v. Griffin*, 849 N.E.2d 507, 514 (Ind. 2006) (quoting *OEC-Diasonics v. Major*, 674 N.E.2d 1312, 1315 (Ind. 1996)). Plaintiffs adamantly contend that the Amended Complaint contains sufficient facts to establish that Defendant issued the Payoff Letter with the intent to benefit Plaintiffs. This is not enough though. In *Cain*, the Indiana Supreme Court made clear that the intent to benefit a third party "must affirmatively

9

appear from the language of the instrument." *Id.* Even if this intent to benefit Plaintiffs is clear from the Amended Complaint, it is not at all apparent from the language of the Payoff Letter. The Payoff Letter makes no mention of Plaintiffs or even M-3's plan to sell the Property. Consequently, Plaintiffs cannot be considered third party beneficiaries under Indiana law. Because they are neither parties to nor third party beneficiaries of the alleged contract, Plaintiffs do not have standing to pursue a breach of contract action against Defendant. *Kahlo*, 938 N.E.2d at 742. Therefore, Defendant's Motion to Dismiss Count III is **GRANTED**.

### E.  Count IV – Tortious Interference with Contractual Relationship

In Count IV, Plaintiffs allege that they had a contractual relationship with M-3 for the purchase of the Property, Defendant was aware of this relationship, and Defendant interfered with this relationship by conspiring with Guardian to accelerate the sale of the Mortgage. Indiana recognizes intentional interference with a contract as an actionable tort. *Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1234 (Ind. 1994). "The tort reflects the public policy that contract rights are property, and under proper circumstances, are entitled to enforcement and protection from those who tortiously interfere with those rights." *Id.* This tort has five elements: "(1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 654-55 (Ind. Ct. App. 2014). Defendant argues that Count IV should be dismissed because, *inter alia*, the

allegations in the Amended Complaint show Plaintiffs cannot satisfy element one.  The court agrees.

In order to sustain a claim of tortious interference with a contractual relationship, Plaintiffs must demonstrate that "a valid and enforceable contract" existed when Defendant allegedly induced a breach.  *Id.*  Yet, Plaintiffs' own evidence shows that Defendant engaged in the purportedly wrongful conduct *before* Anton Realty and M-3 had a valid contract.  Anton Realty and M-3 executed the Purchase Agreement on September 11, 2013.  (Exhibit A).  Defendant sent the Loan Transfer Letter, indicating that it had sold the note to Guardian, on September 10, 2013.  (Exhibit F).  Thus, there was simply no enforceable contract with which Defendant could interfere when it sold (or attempted to sell) the Mortgage to Guardian.  The lack of a valid, enforceable contract on September 10 is fatal to Plaintiffs' claim.  Therefore, Defendant's Motion to Dismiss Count IV is **GRANTED**.

### F.  Count V – Violation of Ind. Code § 32-28-1

Plaintiffs acknowledge that Count II and Count V are actually one in the same.  Asserting the same claim twice was an inadvertent error.  Plaintiffs consequently stipulate to the dismissal of either Count II or Count V.  Therefore, Defendant's Motion to Dismiss Count V is **GRANTED**.

### G.  Count VI – Civil Conspiracy

Plaintiffs allege in Count VI that Defendant engaged in a civil conspiracy with Guardian to accelerate the sale of the Mortgage.  "A civil conspiracy is defined as 'a combination of two or more persons, by concerted action, to accomplish an unlawful

purpose or to accomplish some purpose, not in itself unlawful, by unlawful means.'" *Newland Res., LLC v. Branham Corp.*, 918 N.E.2d 763, 776 (Ind. Ct. App. 2009) (quoting *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998)). Critically, "a claim of civil conspiracy is not an independent cause of action. As such, a claim of civil conspiracy must be considered together with an underlying alleged tort." *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014) (internal citation omitted). The parties agree that the only underlying tort supporting the civil conspiracy claim is tortious interference with a contractual relationship. Whereas the court herein dismisses that tort, Plaintiffs' claim of civil conspiracy necessarily fails as a matter of law. Therefore, Defendant's Motion to Dismiss Count VI is **GRANTED**.

### H. Count VII – Promissory Estoppel

In Count VII, Plaintiffs seek relief under the theory of promissory estoppel. The rationale for this equitable doctrine is that "a person whose conduct has induced another to act in a certain manner should not be permitted to adopt a position inconsistent with such conduct so as to cause injury to the other." *Huber v. Hamilton*, 33 N.E.3d 1116, 1123 (Ind. Ct. App. 2015). A claim of promissory estoppel consists of five elements: "(1) a promise by the promisor (2) made with the expectation that the promisee will rely thereon (3) which induces reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." *Sterling Commer. Credit — Mich., LLC v. Hammert's Iron Works, Inc.*, 998 N.E.2d 752, 757 (Ind. Ct. App. 2013). Plaintiffs' claim arises out of a promise Defendant allegedly made in the Payoff Letter. Defendant seeks dismissal of Count VII for three reasons: (1) the Payoff Letter

did not constitute a promise; (2) even if the Payoff Letter is a promise, Plaintiffs cannot enforce it; and (3) Plaintiffs' claim is barred by the Indiana Lender Liability Act, Ind. Code § 26-2-9-1 *et seq*.

First, Defendant's assertion that the Payoff Letter does not constitute a promise is, in the words of Justice Antonin Scalia, "pure applesauce." *King v. Burwell*, 35 S.Ct. 2480, 2501 (2015) (Scalia, J., dissenting) ("pure applesauce" is commonly interpreted to mean nonsense). The Payoff Letter unquestionably constitutes a promise, which is defined as "a voluntary commitment or undertaking by the party making it (the promisor) addressed to another party (the promisee) that the promisor will perform some action or refrain from some action in the future." *Id.* The Payoff Letter explicitly states, "Fifth Third Bank will issue appropriate release of mortgage . . . upon receipt of the following payment in US Dollars: . . . $765,443.99." (Exhibit B). In the Payoff Letter, Defendant was making a voluntary commitment to perform an action, namely release the Mortgage on the Property, in the future. This satisfies the definition of promise set forth by the *Sterling* court.

Second, Defendant asserts that because the Payoff Letter was sent only to M-3, Plaintiffs cannot enforce it. Yet, it is well settled that an intended third party beneficiary can bring a claim for promissory estoppel. *See In re Fort Wayne Telsat, Inc.*, 665 F.3d 816, 819 (7th Cir. 2011) ("But PBS's contingent lease to the debtor had made the debtor an intended third-party beneficiary of that contract, a relationship that can support a claim of promissory estoppel."); *First Nat'l Bank v. Logan Mfg. Co.*, 577 N.E.2d 949, 954 (Ind. 1991) (adopting the Restatement (Second) of Contracts § 90, which provides that the

13

doctrine of promissory estoppel can afford relief to "the promisee or a third person"). For purposes of Defendant's motion, the court assumes Defendant knew that M-3's desire to pay the balance of the Mortgage resulted from its agreement to sell the Property to Plaintiffs. The Amended Complaint further alleges that Anton Realty discussed this purchase directly with Defendant, and that Defendant informed M-3 that Anton Realty's purchase of the Property was permissible. While not enough to sustain a breach of contract claim, the Amended Complaint alleges sufficient facts to support a reasonable inference that Anton Realty was an intended third party beneficiary for purposes of a promissory estoppel claim.

Third, Defendant argues that a claim pursuant to the Payoff Letter is barred by the Lender Liability Act. The Lender Liability Act prohibits claims arising out of a credit agreement by debtors against creditors unless the credit agreement at issue satisfies three conditions, among which is a requirement that the document be signed by the creditor and the debtor. Ind. Code § 26-2-9-4. Notably, the Payoff Letter is only signed by Defendant. Defendant claims the Lender Liability Act operates as a statute of frauds, which is important because Indiana courts apply a heightened standard to promissory estoppel claims that would otherwise be precluded by a statute of frauds. *See Coca-Cola Co. v. Babyback's Int'l, Inc.*, 841 N.E.2d 557, 569 (Ind. 2006).

Defendant argued that this statute applied in its opening brief, and Plaintiffs disputed that they qualified as debtors, as that term is defined in Section 26-2-9-3, in their Response. Defendant conceded this point in its Reply, and then advanced a new argument: allowing a claim that would otherwise be barred by the Lender Liability Act to

14

proceed merely because it is brought by a third party beneficiary (as opposed to a debtor) would strike against the purpose of the statute. The court considers this contention waived for two reasons. First, Defendant offers no authority whatsoever for this claim. It fails to cite to a single case or provision in the Lender Liability Act that sets forth the legislative purpose. Thus, Defendant has offered nothing more than a bald assertion. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."). Second, this is a new argument, raised for the first time in a reply brief. *See Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived."). Therefore, Defendant's Motion to Dismiss Count VII is **DENIED**.

### I. Plaintiff Andy Mohr Truck Center, Inc.

Defendant's final contention is that the court should dismiss Truck Center as a plaintiff from any claims that survive its Rule 12(b)(6) motion. Although not stylized as such, this argument is more properly analyzed as a motion to drop Truck Center as an improper party under Rule 21. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Defendant fails to provide any justification for dropping Truck Center except that this party is only mentioned a few times in the Amended Complaint. Critically, Defendant makes no attempt to argue that it will be prejudiced if Truck Center remains a plaintiff, that judicial economy favors dropping Truck Center, or that Seventh Circuit precedent supports the motion to drop. Plaintiffs retort that the allegations in the Amended Complaint support a reasonable

inference that Truck Center was harmed.  The court agrees.  Therefore, Defendant's Motion to Drop Truck Center is **DENIED**.

## IV. Conclusion

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss.  (Filing No. 9).  With respect to Count I, Count VII, and Plaintiff Andy Mohr Truck Center, Defendant's Motion to Dismiss is **DENIED**.  With respect to Counts II, III, IV, V, and VI, Defendant's Motion to Dismiss is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**.  The court **DENIES** Defendant's Motion to Strike.  (Filing No. 16).

**SO ORDERED** this 11th day of December 2015.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.