UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTON REALTY, LLC and ANDY MOHR TRUCK CENTER, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | 1:15-cv-00199-RLY-TAB |
| vs. | ) ) | |
| FIFTH THIRD BANK, | ) ) | |
| Defendant. | ) ) | |

**ENTRY ON DEFENDANT'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT**

Plaintiffs, Anton Realty, LLC and Andy Mohr Truck Center, Inc., were interested in purchasing a piece of land encumbered by a mortgage that was held by Defendant, Fifth Third Bank.  Plaintiffs reached an agreement with the land owner to buy the parcel by simply paying the balance of the mortgage to Defendant.  Plaintiffs allegedly informed Defendant of these discussions and Defendant stated that the agreement was permissible.  Defendant also explained that while it had been planning to sell the mortgage to a different financial institution, Plaintiffs' agreement with the mortgagor would extinguish that pending sale.  Despite these representations, Defendant subsequently sold the mortgage and refused to accept Plaintiffs' payment.  Plaintiffs subsequently filed this suit for damages, advancing various state law claims.  Defendant now moves to dismiss the Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the court **DENIES** Defendant's motion.

## I. Background

Plaintiffs filed their seven-count Amended Complaint on May 14, 2015.

Defendant moved to dismiss all seven counts for failure to state a claim, and the court

granted that motion in part on December 11, 2015.  Specifically, the court dismissed *with*

*prejudice* Counts II (violation of Indiana Code § 32-28-1-2), III (breach of contract), IV

(tortious interference with a contractual relationship), V (violation of Indiana Code § 32-

28-1-2), and VI (civil conspiracy), and allowed Counts I (quiet title) and VII (promissory

estoppel) to remain.  Plaintiffs then moved for reconsideration, requesting that the court

amend its dismissal order such that Counts IV and VI would be dismissed *without*

*prejudice*.  Plaintiffs simultaneously moved for leave to file their Second Amended

Complaint.  The court granted both motions on April 26, 2016.  Plaintiffs filed their

Second Amended Complaint on May 5, 2016.

The Second Amended Complaint sets forth three counts: (1) tortious interference

with a contractual relationship, (2) civil conspiracy, and (3) promissory estoppel.

Defendant seeks to dismiss all three counts.

## II. Facts

M-3 Investments, LLC ("M-3") was the owner of commercial real estate property

located at 1301 South Holt Road, Indianapolis, Indiana 46241 (the "Property").  (Filing

No. 52, Second Amended Complaint ¶ 6).  The Property was encumbered by a mortgage

held by Defendant (the "Mortgage").  (*Id.*).  Andy Mohr Automotive Group, Inc. entered

into a lease of the Property from M-3 on or about March 21, 2010.  (*Id.* ¶ 7).  Andy Mohr

Automotive Group, Inc. assigned the lease to Plaintiff Andy Mohr Truck Center, Inc.

("Truck Center"). Truck Center operates a Volvo semi-truck dealership on the Property. (*Id.*).

In the summer of 2013, Truck Center and Plaintiff Anton Realty, LLC, an affiliate of Truck Center, entered into negotiations with M-3 to purchase the Property. (*Id.* ¶ 8). Defendant was aware of these negotiations because Anton Realty discussed its desire to purchase the Property "on multiple occasions with several representatives of" Defendant. (*Id.* ¶ 12). Nonetheless, Defendant agreed to sell the Mortgage to Guardian Brokers ("Guardian") around this time. (*Id.* ¶ 13). Defendant did not disclose this fact to either M-3 or Anton Realty. (*Id.*).

On September 5, 2013, Defendant was made aware of Anton Realty's imminent purchase of the Property from M-3 for an amount that would satisfy the Mortgage in full. (*Id.* ¶ 14). On that same day, Defendant informed M-3 that Anton Realty's purchase was permissible and would extinguish the pending sale of the Mortgage to Guardian. (*Id.*).

On September 9, 2013, Defendant sent a payoff letter (the "Payoff Letter") to M-3 in response to its request for same. (*Id.* ¶ 10; Filing No. 8-2, Exhibit B). In the Payoff Letter, Defendant agreed to "issue appropriate release of mortgage as it relates to the commercial property referred to as 1301 S. Holt Road, Indianapolis, Indiana, upon receipt of the following in U.S. Dollars . . . $765,443.99." The Payoff Letter also states that it "is valid until September 12, 2013."

After issuing the Payoff Letter, Defendant notified Guardian of Anton Realty's pending purchase of the Property. (Second Amended Complaint ¶ 15). In response, Guardian requested that Defendant accelerate the closing on its contract to purchase the

3

Mortgage.  (*Id.*).  Defendant accepted Guardian's request and attempted to immediately assign the Mortgage to Guardian.  (*Id.* ¶ 16).  That attempt was unsuccessful.  (*Id.*).  On September 10, 2013, Defendant issued a notice to M-3 that the loan had been sold to Guardian (the "Loan Transfer Notice").  (Filing No. 8-6, Exhibit F).

Anton Realty and M-3 formally executed the Contract for Purchase of Real Estate ("Purchase Agreement") on September 11, 2013.  (Second Amended Complaint ¶¶ 8, 17; Filing No. 8-1, Exhibit A).  According to the Purchase Agreement, Anton Realty agreed to pay M-3 "an amount equal to the outstanding principal balance and interest accrued" on the Mortgage.  (Exhibit A).  M-3 agreed, in turn, to deliver to Anton Realty a fully-executed limited warranty deed conveying marketable fee simple title to the Property. (*Id.*).  At closing, Anton Realty tendered $767,400.90, which was intended to satisfy the full amount outlined in the Payoff Letter plus closing costs.  (Second Amended Complaint ¶ 17).

After M-3 executed and delivered the limited warranty deed, M-3 received the Loan Transfer Notice from Defendant.  (*Id.* ¶ 18).  The Loan Transfer Notice did not disclose that, at that time, no documents had yet been executed assigning any rights under the Mortgage or the Note to Guardian, or that Defendant remained the legal holder of the Mortgage.  (*Id.* ¶ 19).  Anton Realty then tendered the payoff amount to Defendant and Guardian, but both refused to accept the sum.  (*Id.* ¶ 20).

## III. Legal Standard

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  "Dismissal is appropriate under that rule when

the factual allegations in the complaint, accepted as true, do not state a facially plausible

claim for relief." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016)

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).

## IV. Discussion

Defendant seeks to dismiss all three counts of the Second Amended Complaint.

The court addresses each count in turn.

### A.  Count I – Tortious Interference with a Contractual Relationship

In Count I, Plaintiffs allege that they had a contractual relationship with M-3 for

the purchase of the Property, Defendant was aware of this relationship, and Defendant

interfered with the relationship by conspiring with Guardian to accelerate the sale of the

Mortgage.  Indiana recognizes intentional interference with a contract as an actionable

tort.  *Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1234 (Ind. 1994).  "The tort reflects

the public policy that contract rights are property, and under proper circumstances, are

entitled to enforcement and protection from those who tortiously interfere with those

rights."  *Id.*  This tort has five elements: "(1) the existence of a valid and enforceable

contract; (2) the defendant's knowledge of the existence of the contract; (3) the

defendant's intentional inducement of the breach of the contract; (4) the absence of

justification; and (5) damages resulting from defendant's wrongful inducement of the

breach."  *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 654-55 (Ind. Ct. App.

2014).  Defendant argues that Count I should be dismissed because (1) there was no

enforceable contract between M-3 and Anton Realty at the time Defendant sold the loan

to Guardian, and (2) Plaintiffs have not sufficiently alleged that the purported

interference by Defendant was unjustified.

First, as this court explained in its Entry on Defendant's first motion to dismiss, in

order to sustain a claim of tortious interference with a contractual relationship, Plaintiffs

must demonstrate that "a valid and enforceable contract" existed when Defendant

allegedly induced a breach.  *Id.*  In its first motion to dismiss, Defendant argued that

Plaintiffs could not satisfy that element of the claim.  The court agreed:

> Plaintiffs' own evidence shows that Defendant engaged in the purportedly
> wrongful conduct *before* Anton Realty and M-3 had a valid contract.  Anton
> Realty and M-3 executed the Purchase Agreement on September 11, 2013.
> (Exhibit A).  Defendant sent the Loan Transfer Letter, indicating that it had
> sold the Note to Guardian, on September 10, 2013.  (Exhibit F).  Thus, there
> was simply no enforceable contract with which Defendant could interfere
> when it sold (or attempted to sell) the Mortgage to Guardian.  The lack of a
> valid, enforceable contract on September 10 is fatal to Plaintiffs' claim.

(Filing No. 27 at 11).

Defendant invokes this language and essentially asserts that nothing has changed

in the Second Amended Complaint.  In other words, because Plaintiffs' allegations

remain the same, the court's conclusion should be the same.  In making this argument,

Defendant fails to appreciate that the allegations *are* different in the Second Amended

Complaint.  Plaintiffs now allege that even though Defendant issued the Loan Transfer

Notice on September 10, "no documents had yet been executed assigning any rights

under the Mortgage or the Note to Guardian Brokers," and "the Notes had not been

delivered to Guardian Brokers."  (Second Amended Complaint ¶ 20).  Therefore,

Defendant "was still legally the holder of the mortgage."  (*Id.*).  Defendant allegedly

retained the rights to the Note and Mortgage until September 17, which was *after* the

Purchase Agreement was executed and *after* Anton Realty had tendered the payoff

amount to Defendant.  These allegations, accepted as true, are sufficient to plausibly

show the existence of the first element.

Defendant next argues that Plaintiff has not plausibly alleged the existence of

element four ("the absence of justification").  "[A] plaintiff must state more than a mere

assertion that the defendant's conduct was unjustified.  To satisfy the element of lack of

justification, the breach must be malicious and exclusively directed to the injury and

damage of another."  *Duty v. Boys & Girls Club of Porter Cty.*, 23 N.E.3d 768, 775 (Ind.

Ct. App. 2014) (citation omitted).  According to Defendant, the facts in the Second

Amended Complaint do not rise to this level.  Plaintiffs retort that while they did not

specifically use the word "malice" in their pleading, the court can reasonably infer from

the facts alleged that Defendant acted with the intent to injure Anton Realty.

The court holds Plaintiffs have sufficiently alleged "the absence of justification"

element.  As Plaintiffs note, "the overriding question" for this element is "whether the

defendant's conduct has been fair and reasonable under the circumstances."  *Fulp v.

Gilliland*, 972 N.E.2d 955, 965 (Ind. Ct. App. 2012).  Here, Plaintiffs allege that: (1)

Defendant was aware that Anton Realty was interested in purchasing the Property; (2)

Defendant was notified that a formal agreement for the purchase of the Property by

Anton Realty would be executed imminently; (3) Defendant informed M-3 that Anton

Realty's purchase was permissible and would extinguish its agreement to sell the loan to

Guardian; (4) despite its representation to M-3, Defendant then agreed to accelerate its

sale of the loan to Guardian; (5) when Defendant stated that the loan had been transferred

to Guardian, it knew this was false; and (6) in refusing to accept Anton Realty's payoff,

Defendant acted "without justification, wrongfully, and fraudulently." (Second Amended

Complaint ¶ 30). Plaintiffs also argue in their Response brief that Defendant would have

earned more of a profit if it had allowed Anton Realty to simply pay the balance of the

Mortgage. In other words, Defendant purposefully chose to earn less money by selling

the loan to Guardian. These facts, taken together, are sufficient to support a reasonable

inference that "the alleged breach was malicious and exclusively directed to the injury

and damage of" Plaintiffs. *Duty*, 23 N.E.3d at 775.

### B. Count II – Civil Conspiracy

Plaintiffs allege in Count II that Defendant engaged in a civil conspiracy with

Guardian to accelerate the sale of the Mortgage. "A civil conspiracy is defined as 'a

combination of two or more persons, by concerted action, to accomplish an unlawful

purpose or to accomplish some purpose, not in itself unlawful, by unlawful means.'"

*Newland Res., LLC v. Branham Corp.*, 918 N.E.2d 763, 776 (Ind. Ct. App. 2009)

(quoting *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App.

1998)). Critically, "a claim of civil conspiracy is not an independent cause of action. As

such, a claim of civil conspiracy must be considered together with an underlying alleged

tort." *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014)

(internal citation omitted).

Defendant moves to dismiss Count II because (1) the only underlying tort

supporting the civil conspiracy claim (tortious interference with a contractual

relationship) should be dismissed, and (2) Plaintiffs fail to allege Defendant engaged in illegal conduct.  Neither argument is convincing.  First, the court herein holds that the underlying tort should not be dismissed.  Second, a claim for civil conspiracy does not require an allegation that the underlying conduct is illegal in the sense that it violates the penal code.  Rather, a claim for civil conspiracy can be supported by allegations of tortious conduct.  *See Miller*, 11 N.E.3d at 963.  Such conduct is "unlawful," as required by the Indiana Court of Appeals in *Newland Resources*, because it violates common law and the person wronged can file a suit for damages.  *See Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1235 (Ind. 1994) (analyzing civil conspiracy and tortious interference with a contractual relationship claims together, thereby strongly suggesting that the former can be based on the latter).

### C.  Count III – Promissory Estoppel

In Count III, Plaintiffs seek relief under the theory of promissory estoppel.  The rationale for this equitable doctrine is that "a person whose conduct has induced another to act in a certain manner should not be permitted to adopt a position inconsistent with such conduct so as to cause injury to the other."  *Huber v. Hamilton*, 33 N.E.3d 1116, 1123 (Ind. Ct. App. 2015).  A claim of promissory estoppel consists of five elements: "(1) a promise by the promisor (2) made with the expectation that the promisee will rely thereon (3) which induces reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise."  *Sterling Commer. Credit — Mich., LLC v. Hammert's Iron Works, Inc.*, 998 N.E.2d 752, 757 (Ind. Ct. App. 2013).  Plaintiffs' claim arises out of a promise Defendant made in the Payoff Letter.

9

Defendant seeks dismissal of Count III for two reasons: (1) Plaintiffs have not sustained an unjust and unconscionable injury and loss; and (2) any reliance claimed by either Plaintiff was not reasonable.

First, Defendant argues that Plaintiffs cannot establish the fifth element of a promissory estoppel claim based on how the element has been interpreted and applied by Indiana courts.  In support, Defendant cites to *Brown v. Branch*, where the Indiana Supreme Court concluded,

> In order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of *an unjust and unconscionable injury and loss*.
>
> In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds.

758 N.E.2d 48, 52 (Ind. 2001) (emphasis added).  Defendant contends that Plaintiffs cannot satisfy this heightened standard under the facts alleged in the Second Amended Complaint.

The problem with this argument is that Plaintiffs are not attempting to avoid application of the statute of frauds.  *See* Ind. Code § 32-21-1-1(b) (prohibiting any person from bringing a lawsuit arising out of, *inter alia*, "[a]n action involving any contract for the sale of land" unless "the promise, contract, or agreement on which the action is based . . . is in writing and signed by the party against whom the action is brought or by the party's authorized agent").  Plaintiffs are not seeking to enforce an oral promise.  Rather,

they seek to enforce a *written* promise–the one contained in the Payoff Letter.  Thus, the rule set forth in *Brown* is plainly inapplicable to this case.

Second, Defendant avers that Plaintiffs cannot satisfy the third element of a promissory estoppel claim because their alleged reliance upon the Payoff Letter was not reasonable.  The court disagrees.  There are no facts in the Second Amended Complaint to suggest that Plaintiffs did anything other than take Defendant at its word when it said it would release the Mortgage upon receiving $765,443.99.  As part of this argument, Defendant contends that Plaintiffs are limited to damages incurred between September 9 (the date Defendant made the promise) and September 11 (the date Plaintiffs were notified that Defendant had revoked the promise).  Even assuming this is correct, the type and/or amount of damages available to Plaintiffs has no bearing on whether they have stated a plausible claim for relief.

**V. Conclusion**

In order to survive a Rule 12(b)(6) challenge, the court need only find that Plaintiffs have "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  They have done that here.  Therefore, Defendant's Motion to Dismiss Second Amended Complaint (Filing No. 53) is **DENIED**.


**SO ORDERED** this 14th day of November 2016.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.